IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THEODORE TAYLOR, :
(Reg. No. 07625-003)
:
    Plaintiff,
:
vs.                                       CIVIL ACTION NO.13-00516-KD-M
:
CHARLES E. SHERMAN, *et al.*,
:
    Defendants.
:

**REPORT AND RECOMMENDATION**

Plaintiff Theodore Taylor, proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). After careful review, it is recommended that the action be dismissed, with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous and section 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

**I. Complaint. (Doc. 1).**

In this action, Taylor complains that while housed as a federal pretrial detainee at Baldwin County Sheriff's Correctional Center ("BCSCC") from July 2013 through October 2013, he sustained privacy and discrimination violations after

testing positive for the human immunodeficiency virus ("HIV"). (Doc. 1 at 5). Taylor names as Defendants Dr. Charles E. Sherman, Nurse Fillingin, Classification Officer Carr, and Lieutenant Wilson. (*Id*. at 5-7). For relief, Taylor seeks injunctive and declaratory relief for BCSCC to keep medical information confidential and to cease categorically separating HIV infected inmates from the general population. (*Id*. at 8). In addition, Taylor requests "[m]onetary compensation for mental stress for ridicule from inmates/staff." (*Id*.). Since filing this action, Taylor has been transferred to another facility in Georgia.[1] (Doc. 5).

In July 2013, while seated in a common area of the medical unit, Taylor alleges Nurse Fillingin asked him if he knew he was HIV-positive? (*Id*. at 4). He further alleges that four nurses, two correctional officers, and two other inmates overheard Nurse Fillingin ask him this question. (*Id*.). And, although Dr. Charles Sherman was not present during the alleged disclosure of his HIV status by Nurse Fillingin, Taylor claims that Dr. Sherman is liable for failing to properly train the nursing

---

[1] The exact date of transfer is unclear, but based on Taylor's change of address he filed with the Court, it appears he was transferred in November 2014, after spending approximately three to four months in BCSCC. (Doc. 5). The address provided by Plaintiff, P.O. Box 150160, Atlanta, Georgia, 30315, is for UPS Atlanta, a federal penitentiary, according to its website http://www.bop.gov/locations/institutions/atl/. (Doc. 5 at 1).

staff at BCSCC. (Id. at 6).

Also, Taylor asserts privacy violations against Officer Carr and Lieutenant Wilson for verbally announcing in the presence of other inmates that he was being transferred to N-dorm, "a dorm known by all to be the HIV segregation unit," *id*. at 10, and discrimination claims for segregating him from general population and housing him in the unit with all other HIV infected inmates. (*Id*. at 5).

**II. Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).**

Because Taylor is proceeding *in forma pauperis*, the Court is reviewing his Complaint (doc. 1) under 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831-32, 104 L. Ed. 2d 338 (1989). A claim is frivolous as a matter of law where, inter alia, the defendants are immune from suit, *id.*, 490 U.S. at 327, or the claim seeks to enforce a right that clearly does not exist. *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must

3

show plausibility. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557 (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 920-21, 166 L. Ed. 2d 798 (2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595-596, 30 L. Ed. 2d 652 (1972). The court, however, does not have "license . . . to rewrite an

4

otherwise deficient pleading [by a pro se litigant] in order to sustain an action." *GJR Investments v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott*, 610 F.3d 791, 710 (11th Cir. 2010) (relying on *Iqbal*, 556 U.S. 662). Furthermore, the court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. *Iqbal*, 556 U.S. at 681. In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

**III. Discussion.**

Inmates do not shed all fundamental protections of the Constitution at the prison gates, *Wolff v. McDonnell*, 418 U.S. 593, 555 (1974), but their rights are restrained by legitimate penological objectives of the corrections system. *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) (providing the four-factor test for determining the reasonableness of a prison's regulation to a penological interest). Taylor alleges the defendants are liable for violating his right to privacy under the: (1) physician-patient privilege; (2) Health Insurance Portability and Accountability Act; (3) Due Process Clause of the Fourteenth

5

Amendment.[2]  Taylor further asserts he was discriminated against due to his HIV-positive status.

### A. Disclosure of HIV-positive Status.

#### 1. Physician-Patient Confidentiality.

Taylor asserts his right to "doctor-patient confidentiality" was violated when Nurse Fillingin asked him, while in the presence of others, "if [he] knew }he] was HIV+?" (Doc. 1 at 4, 9).  However, this disclosure, while unprofessional to say the least, is not actionable in a § 1983 action as there is not a federally recognized physician-patient privilege in a federal question case.  The privilege "is an evidentiary rule which does not confer substantive constitutional rights" actionable in a section 1983 action. *Mackler v. Chapman*, No. 1:11-CV-45 (WLS), 2011 U.S. Dist. LEXIS 156605, at *17 (M.D. Ga. May 11, 2011) (internal quotations omitted)(citing *Low v. Stanton*, 2009 U.S. Dist. LEXIS 14840, 2009 WL 595985 *16 (E.D. Cal. Feb. 25, 2009); *Floyd v. Emmet Cnty Corr. Facility*, 2006 U.S. Dist. LEXIS 32518, 2006 WL 1429536, at *4 (W.D. Mich. May 23, 2006); *Johnson v. O'Donnell*, 2001 U.S. Dist. LEXIS 25617, 2001 WL 34372892, at *10 (W.D. Wis.

---

[2] Taylor does not articulate or enumerate that he is stating a claim pursuant to the Fourteenth Amendment; however, construing Taylor's complaint liberally and reading it in a light most favorable to him, the Court will analyze Taylor's complaint as though he intended to plead a constitutional violation.

Aug. 24, 2001). Therefore, it is recommended that Taylor's claim be dismissed as frivolous pursuant to § 1915(e)(2)(B)(i).

    **2. HIPPA Regulations.**

In this action, Taylor claims that Nurse Fillingin "violated H.I.P.A.A. laws by informing [Taylor] that [he] tested positive for HIV in a public area in front of nursing staff, correctional officers, and other inmates." (Doc. 1 at 9). The Health Insurance Portability and Accountability Act of 1996 ("HIPPA") generally provides for confidentiality of one's medical records, protects the privacy of individually identifiable health information, and sets penalties for improper disclosures of medical information. 42 U.S.C. § 1320. But, the enforcement of the statute is limited to the Secretary of Health and Human Services and, under certain circumstances, state attorneys general. 42 U.S.C. §§ 1320d-5(a), (d). HIPAA provides no private right of action enforceable in a section 1983 action. *Acara v. Banks*, 470 F.3d 571 (5th Cir. 2006).

> HIPPA does not contain any express language conferring privacy rights upon a specific class of individuals. Instead, it focuses on regulating persons that have access to individually identifiable medical information and who conduct certain electronic health care transactions. 42 U.S.C. § 1320d-1. HIPAA provides both civil and criminal penalties for improper disclosures of medical information. 42 U.S.C. §§ 1320d-5, d-6. However, HIPAA limits enforcement of the statute to the Secretary of Health and Human Services. *Id*. Because HIPAA specifically delegates enforcement, there is a strong indication

7

> that Congress intended to preclude private enforcement. . . . Every district court that has considered this issue is in agreement that the statute does not support a private right of action.

*Id.* (internal citations omitted). *See also Gonzaga University v. Doe*, 536 U.S. 273, 286 (2002) ("Accordingly, where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action."); *Sneed v. Pan Am Hosp.*, 370 F. App'x. 47, 50 (11th Cir. 2010) ("Private rights of action to enforce federal law must be created by Congress. HIPAA contains no express provision creating a private cause of action.") (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (internal quotation marks and alterations omitted)); *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007) ("Under HIPAA, individuals do not have a right to court action."); *O'Neill v. Bannister*, No. 3:12-cv-0030-LRH (WGC), 2012 U.S. Dist. LEXIS 185433, 24-26 (D. Nev. Aug. 29, 2012) (HIPAA provides no private right of action); *Garber v. City of Clovis*, No. 1:09-CV-0242 AWI SMS, 2012 U.S. Dist. LEXIS 10603, at *23 (E.D. Cal. Jan. 30, 2012) ("To the extent Plaintiffs base their civil rights claim on HIPAA or state law, Plaintiffs' claims must be dismissed. Title 42 U.S.C. § 1983 provide a

vehicle for a Plaintiff seeking relief for violations of the "Constitution and laws." However, if there is no basis for a private cause of action, there is no right under 42 U.S.C. § 1983."); www.hhs.gov/ocr/privacy/hipaa/enforcement/index.html (last visited February 21, 2014) (The U.S. Department of Health and Human Services "Office for Civil Rights is responsible for enforcing the Privacy and Security Rules" of HIPAA.).

Given that HIPAA violations are not enforceable claims in a section 1983 action, any such claims by Taylor are due to be dismissed as frivolous.

**3. Privacy Right under the Fourteenth Amendment.**

While the Constitution does not specifically provide a "right of privacy," the Supreme Court has recognized that the rights it provides may create "zones of privacy." *See Paul v. Davis*, 424 U.S. 693, 712-13 (1976). One of those zones of privacy may be "the individual interest in avoiding disclosure of personal matters" under the Fourteenth Amendment. *Whalen v. Roe*, 429 U.S. 589, 599-03, 605-06 (1977). This protection of the Due Process Clause of the Fourteenth Amendment extends "in a limited way to prisoners as well." *Matson v. Bd. of Educ. Of City Sch. Dist. of N.Y.*, 631 F.3d 57, 64 (2d Cir. 2011) (citing *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999) ("[I]nmates retain those constitutional rights that are not inconsistent

with their status as prisoners or with the legitimate penological objectives of the corrections system.") (internal quotation marks omitted)). As such, courts have found that inmates maintain some degree of privacy rights as to their HIV-positive medical status. *See, e.g., Harris v. Thigpen*, 941 F.2d 1495, 1513-14 (11th Cir. 1991) ("We nevertheless believe and assume *arguendo* that seropositive prisoners enjoy some significant constitutionally-protected privacy interest in preventing the non-consensual disclosure of their HIV-positive diagnoses to other inmates, as well as to their families and other outside visitors to the facilities in question."); *Doe v. Coughlin*, 697 F. Supp. 1234, 1237 (N.D.N.Y. 1988) (acknowledging seropositive inmates' right to privacy in preventing non-consensual disclosure of their medical diagnosis); *Woods v. White*, 689 F. Supp. 874, 876 (W.D.Wis. 1988) (despite incarceration, constitutional right to privacy extended to inmate's seropositive status), *aff'd*, 899 F.2d 17 (7th Cir. 1990).

However, to date, the Eleventh Circuit has not recognized a constitutional violation of an inmate's right to privacy when his or her HIV-positive medical status has been revealed to others within the prison, despite if the disclosure was verbal or non-verbal, incidental or deliberate. *See Thigpen*, 941 F.2d

1495 at 1522 ("To the extent that the segregation policy encroaches upon the privacy rights of HIV-positive inmates, it is a reasonable infringement in light of the inmate interests at stake (both seropositive and general population)); *Reed v. Allen*, 379 F. App'x. 879 (11th Cir. 2010) (finding prison policy requiring HIV-positive inmates to wear white wristbands did not violate inmates' Fourteenth Amendment privacy rights despite policy's result in non-consenual disclosure of HIV-positive status to other inmates); *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995) (no constitutional violation when prison official disclosed HIV-positive status of inmate to another officer, inmate, and the barber); *Moore v. Mabus*, 976 F.2d 268, 271 (5th Cir. 1992) (segregation of HIV-positive inmates was reasonable anti-contagion measure even thought it incidentally disclosed medical status of infected inmates); *McDaniels v. Strength*, CV 108-110, 2008 U.S. Dist. LEXIS 108525, at *10 (S.D. Ga. Oct. 28, 2008) (Placement of inmate in segregation due to his HIV-positive status was constitutional.); *Burguest v. United States*, 2007 U.S. Dist. LEXIS 102056 (S.D. Fla. Dec. 17, 2007), *aff'd on other grounds by*, 316 F. App'x 955 (11th Cir. 2009) (No constitutional violation found where clearly established law did not exist to put defendants on notice that disclosing inmate's HIV-positive status would constitute a violation of federal

11

law.).

Based on the firm precedent of the Eleventh Circuit, no constitutional violation can be found on the part of any defendant named in this action for disclosing Taylor's HIV status. Therefore, any disclosure of Taylor's HIV-positive status is not a constitutional violation, and Taylor's right to privacy allegation fails to state a claim upon which relief may be granted.[3]

### 4. Supervisory Liability for Disclosure.

Taylor claims Dr. Sherman failed to train and supervise the nursing staff at BCSCC and is therefore liable for violating his constitutional right of privacy to his medical information. (Doc. 1 at 7). But, Taylor admits that Dr. Sherman did not

---

[3] Disclosure of a prison inmate's medical information or records could be actionable under the cruel and unusual punishments clause, instead of the due process clause. *Anderson v. Romero*, 72 F.3d 518, 523 (7th Cir. 1995). However, Taylor does not plead any facts to support or even imply such a claim.

To state a claim for cruel and unusual punishment, Taylor would need to show that in disclosing his HIV-positive status, the defendants acted with deliberate indifference, "know[ingly] disregard[ing] an excessive risk to [his] health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Given the standard policy, according to Taylor, of BCSCC to categorically separate HIV-positive inmates from the non-HIV infected inmates, Taylor would have great difficulty supporting a cruel and unusual punishments claim without a specific act by a defendant to cause him harassment, harm, injury, or to threaten his safety by making the target of violence by other inmates. *Anderson*, 72 F.3d at 523. Therefore, with no allegations of actual injury and only a brief incarceration at BCSCC (approximately 4 months), Taylor fails to plead any facts that would indicate a plausible claim of cruel and unusual punishment.

personally participate in any disclosure of his medical information. (*Id*.). Therefore, to succeed in this action, Dr. Sherman would have to be held liable under the theory of *respondeat superior* or supervisory liability. However, Dr. Sherman cannot be sued in a § 1983 action under theory of *respondeat superior*, *see Edwards v. Ala. Dep't of Corr.*, 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not sufficient to support their § 1983 claim. . . ."), and Taylor has failed to articulate any details that would support a claim for supervisory liability under § 1983, *see Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

> Supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Alternatively, the causal connection may be established when a supervisor's "'custom or policy . . . result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."

*Cottone*, 326 F.3d at 1360-61 (internal citations omitted).

First, Taylor's conclusory statement that Dr. Sherman

13

"[a]llowed the medical staff to operate illegally while under his supervision" is not enough to support an allegation of supervisory liability, doc. 1 at 7, because it makes no connection between any custom or policy and action of Dr. Sherman and the claims pled.  More importantly, there has been no constitutional violation found on the part of any defendant in this action for a violation of Taylor's right to privacy of his HIV status.

Thus, there can be no supervisory liability without an underlying constitutional violation.  *Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996); *cert. denied*, 522 U.S. 966 (1997).  Therefore, the claims against Dr. Sherman are due to be dismissed as frivolous.

**B. Discrimination Due to HIV-positive Status.**

Taylor contends that he was discriminated against on the basis of his HIV illness.  He argues he was discriminated against when Officer Carr and Lieutenant Wilson housed him, for his brief stay of approximately four months, in N-dorm with all other HIV infected inmates.  This claim, however, does not form a basis for relief under the law of this circuit.

In the pivotal case of *Harris v. Thigpen*, 941 F.2d 1495 (11th Cir. 1991), HIV infected prisoners were administratively

14

separated from the non-infected inmates. This mere act of separation alone publically disclosed and branded HIV-positive inmates. While the Eleventh Circuit acknowledged that HIV-positive prisoners "enjoy[ed] some significant constitutionally-protected privacy interest in preventing the non-consensual disclosure of their HIV-positive diagnoses to other inmates," the Court reasoned that any encroachment this segregation had on the privacy rights of the HIV inmates was outweighed by the state's legitimate penological interest in safety. *Id*. at 1512, 1521. Although *Thigpen* was decided over 20 years ago, it is still the law of the circuit. See *McDaniels v. Strength*, CV 108-110, 2008 U.S. Dist. LEXIS 102246, at *3 (S.D. Ga. Dec. 18, 2008) (holding that " in the absence of any other allegations, the involuntary placement of HIV prisoners in separate HIV dorms does not violate the prisoners' constitutional rights"); *Burguest v. United States*, 2007 U.S. Dist. LEXIS 102056 (S.D. Fla. Dec. 17, 2007) (granting qualified immunity to defendant, noting that there was no state, Eleventh Circuit, or United States Supreme Court decisions that would have put the defendant officer on notice that her actions [allegedly disclosing plaintiff's HIV-positive status to other inmates] would constitute a violation of federal law); *but cf. Henderson v. Thomas*, 913 F.Supp 2d 1267, 1318 (M.D. Ala. 2012) (The court determined that the

Alabama Department of Corrections should assess each HIV-positive prisoner individually before determining how to treat him or her in the prison system. But, the court stated it "cannot overemphasize that it is not holding that all HIV-positive prisoners are entitled to be co-mingled with HIV-negative prisoners.")

Therefore, the defendants' administrative placement of Taylor in N-dorm, based solely on his HIV-positive status, was not a constitutional violation, and Taylor has failed to state a claim upon which relief may be granted for alleged discrimination due to his illness.

**IV. Conclusion.**

Based upon the foregoing reasons, it is recommended that Plaintiff Theodore Taylor's action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) as his claims are frivolous and fail to state a claim upon which relief may be granted.[4]

---

[4] In the alternative to the recommended dismissal of this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), (ii), Taylor's claims are due to be dismissed pursuant to 42 U.S.C. § 1997e(e). Section 1997e(e) states that "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

In this action, Taylor seeks declaratory and injunctive relief, *see* doc. 1 at 8, which is moot because he has been transferred from BCSCC. *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988), *cert. denied*, 488 U.S. 1046 (1989) ("Absent

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates

---

class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred." (quotation omitted)).

Furthermore, he seeks monetary damages for mental stress. (Doc. 1 at 8).  Pursuant to § 1997e(e), Taylor may not recover compensatory or punitive damages without a showing of actual injury, and his complaint fails to allege any suffered injury. In fact, he clearly states he seeks "[m]onetary compensation for mental stress for ridicule from inmates/staff."  (*Id.*).  This alleged "injury" would only allow Taylor to recover nominal damages, if he were successful. *See Carey v. Piphus*, 435 U.S. 247, 266-67 (1978) (holding if plaintiffs were entitled to nominal damages for the violation, the damages should not exceed one dollar); *Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999) ("[N]ominal damages, of which $1 is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury.").

Therefore, Taylor's action is due to be dismissed pursuant to 42 U.S.C. § 1997e(e), and only Taylor's claim for nominal damages, typically in the amount of one dollar, would proceed.

by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 26th day of February, 2014.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE